UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

v.                                                          CASE NO:   3:14-cr-52-J-32PDB

SHANEN REYLING
_____/

**<u>DEFENDANT'S SENTENCING MEMORANDUM</u>**

**COMES NOW** the Defendant, SHANEN REYLING, by and through undersigned counsel and files this, his Sentencing Memorandum, in which the Defendant includes his objections to the presentence investigation report [PSR] and requests this Court to impose a reasonable sentence.  In support of that request, the Defendant states as follows:

**I.   INTRODUCTION**

The Defendant is scheduled for sentencing before this Court on April 28, 2015 at 11:00 a.m.  This Memorandum is intended to outline those factors that the Defendant believes this Honorable Court should consider, in fashioning a sentence that appropriately punishes the Defendant, while recognizing the unusual nature of his offense conduct, the Defendant's lack of prior criminal activity, his service to his country and the lack of any likelihood that the Defendant will reoffend.

The Defendant's offense conduct and the unusual facts surrounding the commission of this offense justify a sentence significantly below the advisory guidelines range, when considered in the light of the holding in *United States vs. Booker* and the factors set forth in 18 U.S.C §3553(a).

## II.     FACTUAL SUMMARY

As outlined in the P.S.R., Mr. Reyling met J.E. early in 2012, while serving in the U.S. Navy in Pensacola, Florida.  He met her on an internet site, where she listed her age as 18.  They communicated by computer, developed the beginning of a relationship, and eventually met in person at a shopping mall.  They began dating, but Mr. Reyling quickly learned that J.E. was underage, so they were not sexually active.

J.E. came from a troubled family situation.  She was the daughter of an active prostitute, who had an outcall business using the same online publications, such as Backpage.com, that J.E. and Mr. Reyling would later use.  J.E. was familiar with her mother's business, and understood how it worked.

In the summer of 2012, Mr. Reyling received orders transferring him to Jacksonville.  J.E. turned 16 at about the same time, and Mr. Reyling asked if she wished to move with him.  J.E. agreed, seeing an opportunity to escape her tumultuous home life.

Once in Jacksonville, Mr. Reyling served at NAS Mayport, while J.E. worked as a pizza delivery driver.  They soon realized that she was spending more in gas money than she was making, and she quit.  She could not find alternative employment.

It was at this point that she began discussing prostitution as an alternative.  Mr. Reyling opposed the idea, suggesting that they get married instead, and explaining that they would then be entitled to a substantial Basic Allowance for Subsistence from the Navy.  J.E. refused, wanting to get married later.

In early September, J.E., without Mr. Reyling's knowledge, began posting ads for "companionship services" on websites catering to prostitution.  All of the photos she

posted were "selfies". No photos were taken or posted by Mr. Reyling. Mr. Reyling did not receive or monitor calls from "johns", nor did he make any appointments for J.E. or assume and of the traditional roles of a "pimp". J.E. managed her own activities, and his primary role was to keep track of her and protect her from harm. To accomplish this, each of them installed a geo-locator app on their telephones, which allowed each of them to find the other immediately. They also used a code, to communicate about what activity J.E. was engaging in, and to alert Mr. Reyling if she felt she needed help. J.E. and the Defendant jointly spent at least $600.00 of the proceeds from the scheme.

The entire period from posting of the first ads until the criminal activity stopped was only about fourteen (14) days, from September 7, 2012 through September 21, 2012. Phone records indicate that the primary period of prostitution activity lasted only from September 17, 2012 through September 21, 2012.

### III.   DETERMINING AN APPROPRIATE SENTENCE

The Court is familiar with the method by which 18 U.S.C §3553(a) factors are generally applied, as well as the operation of the "parsimony principle". What follows is a specific application of the relevant §3553(a) factors to Mr. Reyling:

**(1)   The nature and circumstances of the offense and the history and characteristics of the defendant:**

As outlined above, the offense conduct occurred over an extremely short period of time. There was no violence or coercion involved, and J.E. was free to terminate the activity at will.

Mr. Reyling is still serving in the U.S. Navy, and has no history of criminal conduct, other than this incident.

**(2)    the need for the sentence imposed-**

  **(B)    to afford adequate deterrence to criminal conduct;**

  **(C)    to protect the public from further crimes of the defendant;**

Mr. Reyling has no prior criminal history, and he has continued to serve his country in the United States Navy, while on pretrial release.  He has a strong family support system, and has asked that he be allowed to return to reside with his family, if given a probationary sentence.

While on pretrial release, Mr. Reyling met and married the former Beth Doyle. He has been completely open and honest about his criminal conduct with her and her family, and she is prepared to stand with him, as he accepts the consequences.  This is further indication that Mr. Reyling is focused on avoiding any further criminal conduct, and in remaining a productive citizen on whom others can depend.

There is nothing in this case, that indicates that a sentence of imprisonment is necessary, to deter the Defendant from reoffending.  Nor is imprisoning Mr. Reyling necessary to protect the public, because it is so extremely unlikely that he will commit further crimes.

  **(3)   The kinds of sentences available;**

Mr. Reyling's offense of conviction is a Class D felony, and is not a sex offense. The Court therefore has the discretion to impose a traditional probationary sentence, which may include a period of house arrest.  Despite serious financial problems that made it difficult for him to maintain all of the conditions of his Pretrial Release Order, Mr. Reyling has demonstrated that he is amenable to probationary supervision, complying with all of his release conditions, without incident.

**(7) Restitution;**

Imprisoning Mr. Reyling would only delay payment of any restitution due J.E.

**IV. CONCLUSION**

For the foregoing reasons, Mr. Reyling requests imposition of a probationary sentence with or without home confinement, followed by a term of supervised release, if the Court deems it necessary.

Respectfully submitted, this 24th day of April 2015.

        **SMITH & HAINE, P.A.**
        **Attorneys at Law**

        */s/ A. Russell Smith*

        **A. RUSSELL SMITH, Esquire**
        Florida Bar No.: 296880
        arsmith@smithhainelaw.com
        **ROSS S. HAINE, II, Esquire**
        Florida Bar No.: 0135781
        rosshaine@smithhainelaw.com
        519 Newnan Street
        Jacksonville, Florida 32202
        904-355-5633; Fax 904-353-1315
        office@smithhainelaw.com
        *Attorneys for the Defendant*

    I HEREBY CERTIFY that a copy of the above and foregoing has been furnished to Mac Heavener, Assistant U.S. Attorney, by: [ x ]e-mail: CM-ECF, [ ] U.S. Mail, [ ] hand, this date.

        */s/ A. Russell Smith*
        Attorney